# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIN J. PAXSON,<br><br>　　　　Plaintiff-Appellant,<br><br>*on behalf of herself and others similarly situated*,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC., et al.<br><br>　　　　Defendants-Appellees. | Case No. 25-2436<br><br><br><br>**<u>APPELLANT'S<br>OPENING BRIEF</u>** |

JOEL S. HENGSTLER, ESQ.
Nevada Bar No. 11597
MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
THE 702 FIRM
8335 W. Flamingo Road
Las Vegas, Nevada 89147
*Attorneys for Plaintiff-Appellant*

## <u>ORAL ARGUMENT REQUESTED</u>

## **JURISDICTION**

*Subject Matter Jurisdiction.* The District Court had diversity jurisdiction per 28 U.S.C. § 1332.

*Appellate Jurisdiction.* This Court has jurisdiction per 28 U.S.C. § 1291 because the District Court entered a final judgment on March 21, 2025, and Erin Paxson filed her notice of appeal on April 1. Fed. R. App. P. 4(a)(1)(A).

## **DISCLOSURES**

These disclosures are made per Fed. R. App. P. 26.1:

1. Erin J. Paxson is an individual.

2. The 702 Firm represents the above person in this Court and represented her before below.

Dated: June 26, 2025.

**The 702 Firm**

/s/ Joel S. Hengstler

_____

JOEL S. HENGSTLER, ESQ.

[ ii ]

## TABLE OF CONTENTS

**1. Statement of the Case.** ................................................................................1

   1.1  Front Gate's website purports to bind visitors to its Terms of Use. ...2

   1.2  Front Gate can change the Terms of Use "at any time" without notice to Erin, "effective immediately." ........................................................2

   1.3  The District Court imports a duty of good faith and fair dealing into the Terms of Use to save Front Gate from its own drafting. ...............4

**2. STANDARD OF REVIEW.** ...........................................................................5

**3. SUMMARY OF ARGUMENT.** ....................................................................6

**4. ARGUMENT.** ..................................................................................................8

   4.1  The plain language of the Terms of Use allow Front Gate to unilaterally modify arbitration for accrued or pending claims. .........8

   4.2  In Nevada, a contract must bind both parties—otherwise, it binds neither. The Terms of Use do not bind Front Gate. .............................9

   4.3  The Supreme Court of Nevada has never used the duty of good faith and fair dealing to save an otherwise illusory contract. ....................11

   4.4  Nevada's public policy is to take what the stronger party wrote at face value—not to judicially intervene to save it. ...............................13

   4.5  The Supreme Court of Nevada would follow the *Zappos* decision, which is directly on point and correctly applies Nevada law...........15

   4.6  The Supreme Court of Nevada would, if presented squarely with the question, join those courts that find similar arbitration agreements illusory. ............................................................................................16

   4.7  The Supreme Court of Nevada follows the principle of construction against the drafter—which it would apply here to thwart Front Gate's interests. ............................................................................................17

**5. CONCLUSION** ..............................................................................................19

# TABLE OF AUTHORITIES

**SUPREME COURT OF NEVADA – KEY CASES**

*Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151 (Nev. 2016).........7, 13, 14, 17

*Sala & Ruthe Realty v. Campbell*, 515 P.2d 394 (Nev. 1973)................. 6, 9, 10, 11

*Serpa v. Darling*, 810 P.2d 778 (Nev. 1991) ............................................... 6, 7, 12

*Zhang v. Eighth Jud. Dist.*, 103 P.3d 20 (Nev. 2004) ................................... *passim*

**KEY PERSUASIVE AUTHORITY**

*Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012) ......... 9, 10, 17

*Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002) ....... 7, 16, 18, 20

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058 (D. Nev. 2012)............................................................................... *passim*

*Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169 (4th Cir. 2025) ................... *passim*

**OTHER CASES**

*Cohn v. Ritz Transp., Inc.*, No. 2:11-CV-1832 JCM (NJK), 2014 U.S. Dist. LEXIS 53381 (D. Nev. Apr. 17, 2014) ..........................................................5

*Dickenson v. Nev. Dep't of Wildlife*, 110 Nev. 934 (1994)......................... 7, 17, 20

*Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) ...............16

*Harris v. Blockbuster, Inc.*, 622 F. Supp. 2d 396 (N.D. Tex. 2009) ......................8

*Heckman v. Live Nation Entm't, Inc.*, 686 F. Supp. 3d 939 (C.D. Cal. 2023) ......1

*Heckman v. Live Nation Entm't, Inc.*, 120 F.4th 683 (9th Cir. 2024) ..... 1, 2, 5, 10

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003).........................16

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022) ...................................................5

*Nat'l Fed'n of the Blind v. Container Store, Inc.*, 904 F.3d 70 (1st Cir. 2018) .....17

*Nautilus Ins. v. Access Med., LLC*, 482 P.3d 683 (Nev. 2021) ............................16

*NFL v. Gruden*,  Case No. 85527, 2024 Nev. Unpub. LEXIS 394 (Nev. May 14, 2024).................................................................................................................12

*Reno v. West Cab Co.*,  No. 2:18-cv-00840-APG NJK, 2020 U.S. Dist. LEXIS 171842 (D. Nev. Sep. 18, 2020) ..................................................................4, 5

*Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012) .............. 9, 10

*Rhyan v. DW Direct, Inc.*, No. 4:19-CV-3599, 2020 U.S. Dist. LEXIS 193625 (S.D. Tex. Oct. 19, 2020) ...........................................................................18

*United Servs. Auto Ass'n v. Schlang*, 894 P.2d 967 (Nev. 1995) ........................16

**OTHER AUTHORITIES**

https://frontgatetickets.com/terms-of-use.......................................................3

[ v ]

## ISSUES PRESENTED

**Question:** Under Nevada law, is a purported agreement to arbitrate illusory if one party can modify it at any time, without notice to the other—and there is no saving clause that forbids the stronger party from changing the agreement with respect to accrued or pending claims?

**Answer:** Yes, the agreement is illusory—and under such circumstances, no valid contract to arbitrate was formed. *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065–66 (D. Nev. 2012) (applying Nevada law) ("Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract.") (gathering cases).

1.    **Statement of the Case.**

This case concerns Ticketmaster's failure to issue refunds for the 2022 "Lovers & Friends" festival in Las Vegas.  On opening night, staff stopped the show to announce an unconfirmed "security incident"—causing a stampede as festivalgoers climbed over each other to escape a supposed shooter.  (EOR–7 ¶ 22.)  No shooter was ever found.

Ticketmaster's "Purchase Policy" makes some events "eligible for refunds."  (EOR-8 ¶¶ 22–23, 30–37.)  Ticketmaster declined to issue refunds to those caught in the stampede.

Festivalgoer Erin Paxson brought a putative class action against Live Nation Entertainment, Inc.—Ticketmaster's parent company—and others to get their money back.  She assumed the defendants would be unable to compel arbitration because a District Court had invalidated Ticketmaster's arbitration clause.  *Heckman v. Live Nation Entm't, Inc.*, 686 F. Supp. 3d 939, 945 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670, 676 (9th Cir. 2024).

Ticketmaster moved to arbitrate not under its own clause, however, but one in the Terms of Use of the website of a subsidiary—Front Gate Ticketing Solutions, LLC ("Front Gate").  Front Gate may change those terms "at any time," effective "immediately."  (EOR-15.)  We turn to them now.

[ 1 ]

## 1.1 Front Gate's website purports to bind visitors to its Terms of Use.

Live Nation is the only ticket seller for "almost all live concerts." *Heckman*, 120 F.4th at 682. The public must visit its website (or those of its subsidiaries), or else be shut out of the market altogether. *Id.*

Live Nation delegates festival ticket sales to its subsidiary Front Gate. (EOR-6, ¶ 12.) Erin clicked her way through several screens on Front Gate's website to purchase Lovers & Friends tickets. By doing so, she purportedly became bound by the website's "Terms of Use."[1]

## 1.2 Front Gate can change the Terms of Use "at any time" without notice to Erin, "effective immediately."

Front Gate begins the Terms of Use by giving itself a right to unilaterally modify them without notice:

> By visiting or using the Site, you expressly agree to these Terms, as updated from time to time.

> We may make changes to these Terms at any time. Any changes we make will be effective immediately when we post a revised version of these Terms on the Site. The "Last Updated" date above will tell you when these Terms were last revised. By continuing to use this Site after that date, you agree to the changes.

(EOR-15–16.)

---

[1] Erin's ticket purchase was governed by a separate document, the "Terms of Sale." Defendants do not rely on the Terms of Sale, so they are not at issue.

[ 2 ]

The website gives no "Last Updated" date—and it likely never has. (*Id.*); *see* https://frontgatetickets.com/terms-of-use (accessed June 18, 2025).

The Terms of Use prohibit at least 28 types of user conduct—including at least one that Front Gate may define in its "sole discretion"—in purported exchange for the user being "grant[ed]" a conditional "license to view" the website.  (EOR-18–21.)  In other words, users receive a "license" to view material Front Gate publicly posts on the Internet.

Users have no other rights under the Terms of Use.  For instance, Front Gate may "cancel … tickets or merchandise acquired" by users, and it may "refuse to honor" purchases.  (EOR-29–30.)  Moreover, Front Gate may, for any reason—"or for no reason"—cancel the user's account, delete the user's content, and prevent the user from accessing the site.  (EOR-29.)  Front Gate also reserves the right to "take legal action we feel is appropriate" (*Id.*).

Finally, at the bottom of the twentieth page, there is a "Disputes" section with an arbitration clause.  The "Disputes" section states that disputes "relating in any way" to "products or services sold or distributed" by or through Front Gate must be arbitrated.  (EOR-33–34.)  If a claim "involves the conditional license," however, a suit may be brought in federal or state court.  (EOR-34.)

[ 3 ]

### 1.3 The District Court imports a duty of good faith and fair dealing into the Terms of Use to save Front Gate from its own drafting.

Erin argued below that Front Gate's Terms of Use failed for lack of consideration. The Terms of Use bound Front Gate to nothing, and they gave Front Gate a unilateral right to change them immediately.

The District Court first determined that Nevada law applies to contract formation issues. (EOR-50). It then acknowledged the substantial body of case law holding that if one party to an arbitration agreement "has the unilateral right to modify or terminate the agreement," then there is no consideration: The stronger party "can always decide whether to litigate or arbitrate merely by changing or terminating the agreement." (EOR-55–56.) This position is held by "[m]ost" Courts. *In re Zappos.com, Inc.,* 893 F. Supp. 2d 1058, 1065–66 (D. Nev. 2012) (gathering cases).

Departing from this national trend, the District Court cited another case—*Reno v. West Cab Co.*—for the proposition that because Nevada imposes a duty of good faith and fair dealing on *successfully formed* contracts, this must mean that the duty of good faith and fair dealing should be read into an otherwise illusory contract to save it. No. 2:18-cv-00840-APG-NJK, 2020 U.S. Dist. LEXIS 171842, at *7 (D. Nev. Sep. 18, 2020) (Gordon, J.).

[ 4 ]

In its analysis, the District Court overlooked that the arbitration contract at issue in *West Cab* had a saving clause: Although the cab company could change or terminate the arbitration agreement, the clause stated explicitly that "[a]ny change or termination will not apply to a pending claim." *Id.* Front Gate's Terms of Use had no such saving clause.

The District Court also cited a case on substantive unconscionability for an already-formed contract. *Cohn v. Ritz Transp., Inc.*, No. 2:11-CV-1832 JCM (NJK), 2014 U.S. Dist. LEXIS 53381, at *8 (D. Nev. Apr. 17, 2014) (Mahan, J.). Based on *West Cab* and *Cohn*, the District Court held that under Nevada law, Courts must use the duty of good faith and fair dealing to save a one-sided contract. The Court then granted Live Nation's motion to compel arbitration. This appeal follows.

## 2. STANDARD OF REVIEW.

This Court reviews questions of state law contract formation de novo. *Heckman*, 120 F.4th at 680 (9th Cir. 2024). Moreover, the FAA's policy is to make arbitration clauses "as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). Whether a contract is illusory goes to formation, so no FAA presumption in favor of arbitrability applies. *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 173 (4th Cir. 2025).

[ 5 ]

## 3.     SUMMARY OF ARGUMENT.

In Nevada, "unless both parties to a contract are bound, neither is bound." *Sala & Ruthe Realty v. Campbell*, 515 P.2d 394, 396 (Nev. 1973). When the stronger side keeps for itself an unlimited option to back out of its so-called promise, Nevada Courts act as if no contract exists at all. *Id.*

Here, Front Gate's Terms of Use allow the stronger party to modify them "effective immediately," without notice to the weaker party. This provides Front Gate with a built-in "escape hatch" to avoid arbitration if it so chooses—yet those same Terms purport to bind Erin, the weaker party, to arbitrate her claims. *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 181 (4th Cir. 2025); *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012).

The Terms of Use are thus illusory under Nevada law—unless, as the District Court did below—the Supreme Court of Nevada would import the duty of good faith and fair dealing to save them.

The Supreme Court of Nevada has never done such a thing. *See, e.g., Sala & Ruthe Realty v. Campbell*, 515 P.2d 394, 396 (Nev. 1973) (holding that a contract was illusory because one side could—in bad faith—back out of the deal by withholding its approval of certain items); *Serpa v. Darling*, 810 P.2d 778, 781 (Nev. 1991) (same).

[ 6 ]

In *Serpa*, only the dissent would have imported the duty of good faith and fair dealing into the contract to make it non-illusory. *Id.* at 784. The majority did not. This makes sense: Nevada Courts will not reason in "a circle" to find support for a contract by presuming consideration where there is none. *Zhang v. Eighth Jud. Dist.*, 103 P.3d 20, 24 (Nev. 2004)

What is more, Nevada has "long refrained" from rewriting contracts where the stronger party has overreached to the point of making them unenforceable. *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 156 (Nev. 2016). Nevada's public policy is to discourage heavy-handed drafting—and to maintain the "impartiality that is required of the bench" by refusing to help the stronger party redraft its contracts. *Id.*

Most courts hold that unilateral modification provisions like the one in this case render a purported contract illusory. *In re Zappos*, 893 F. Supp. at 1065 (collecting cases). Given Nevada's public policy commitments, the Supreme Court of Nevada would do so as well. If anything, Nevada law would construe the Terms of Use against the drafter and hold them illusory. *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219–20 (10th Cir. 2002); *see also Dickenson v. Nev. Dep't of Wildlife*, 110 Nev. 934, 937 (1994) (embracing the canon of construction against the drafter). This Court should reverse.

[ 7 ]

**4. ARGUMENT.**

Under Nevada law, the Terms of Use are illusory and do not constitute a valid contract. We start by examining the one-sided modification clause in the Terms of Use. Then, we apply Nevada contract formation law. Finally, we turn to how other jurisdictions have addressed similar arbitration agreements containing a one-sided right to modify.

**4.1 The plain language of the Terms of Use allow Front Gate to unilaterally modify arbitration for accrued or pending claims.**

Under the plain language of the Terms of Use, Front Gate could modify them effective immediately, without notice to Erin:

> By visiting or using the Site, ***you expressly agree to these Terms, as updated from time to time.***

> We may make changes to these Terms ***at any time. Any changes we make will be effective immediately*** when we post a revised version of these Terms on the Site. The "Last Updated" date above will tell you when these Terms were last revised. By continuing to use this Site after that date, you agree to the changes.

(Doc. 30-3, at pp 2–3) (emphasis added).

This language gives Front Gate an unfettered right to modify or delete its arbitration clause, even in the face of accrued or pending claims. *Harris v. Blockbuster, Inc.*, 622 F. Supp. 2d 396, 398–99 (N.D. Tex. 2009) (finding an arbitration agreement with almost identical terms illusory).

[ 8 ]

Such a modification clause is a "built-in escape hatch" designed to allow the stronger party to avoid its obligations. *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 181 (4th Cir. 2025) (holding an arbitration agreement illusory where one party could make changes "upon such notice to you as is required by law"); *see also Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012) (holding an arbitration agreement illusory when new amendments would become binding "almost instantaneously" upon notice).

### 4.2 In Nevada, a contract must bind both parties—otherwise, it binds neither. The Terms of Use do not bind Front Gate.

In Nevada, "unless both parties to a contract are bound, neither is bound." *Sala & Ruthe Realty v. Campbell*, 515 P.2d 394, 396 (Nev. 1973). This is basic fairness: If one party isn't legally bound to perform, the other party shouldn't be, either. *See id.*

When the stronger side keeps for itself an unlimited option to change its so-called promise, that promise is "illusory"—so Courts will not then bind the weaker side to perform. *Id.*; *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1439 (2012) (explaining these principles in more depth).

Here, Front Gate's "promise" to arbitrate is illusory. Front Gate can escape at any time by exercising its right to modify the agreement.

[ 9 ]

If the user accesses Front Gate's website for any reason—such as to retrieve tickets, confirm event details, or check for refund announcements—the user is purportedly bound to the new terms. The user need not have seen the new terms, nor have manifested assent to them in any way.

As this Court has noted, "customers may be *required* to visit the website again to access and use previously purchased tickets." *Heckman*, 120 F.4th at 683. So in practice, Front Gate keeps an unlimited right to change the Terms of Use at any time. And it may do so retroactively, changing the way ongoing disputes are to be resolved: When a user looks up the Terms of Use to find out how to make a claim, or refers Front Gate's website during a lawsuit, the user is purportedly bound to the new terms.

By their language, the Terms of Use are thus illusory. *Sala*, 515 P.2d at 396; *Johnson*, 131 F.4th at 181; *Carey*, 669 F.3d at 209; *see also Peleg*, 204 Cal. App. 4th at 1439 (explaining that a notice provision—which merely describes how changes will be announced—is not a saving clause, which would stop the stronger party from changing the terms of arbitration during litigation).

The Terms of Use cannot be a contract unless—as the District Court held—Nevada would import a duty of good faith and fair dealing into them to save Front Gate from its one-sided drafting. We turn to that next.

[ 10 ]

**4.3 The Supreme Court of Nevada has never used the duty of good faith and fair dealing to save an otherwise illusory contract.**

The Supreme Court of Nevada disfavors arguments that require reasoning "in 'a circle' … to support" the formation of an agreement. *Zhang v. Eighth Jud. Dist.*, 103 P.3d 20, 24 (Nev. 2004) (partially overturned on unrelated grounds). The Court will not first assume that a contract was successfully formed—then imply consideration for it. *Id.*

Nevada law has never relied on the duty of good faith to save an illusory contract. For instance, in *Sala & Ruthe Realty v. Campbell*—a case the District Court cited below—a potential motel buyer had signed a document titled "Offer and Acceptance Agreement," which set out the terms for his purchase of the property. 515 P.2d 394, 395 (1973).

The offer was "subject to buyer's approval of inventory and accounting books." *Id.* at 396 n.1. The Court held that because the buyer could back out by withholding his approval, the contract was illusory. *Id.*

If Nevada allowed the duty of good faith to save an illusory contract, the document would have been enforceable: The buyer would have needed to use good faith in deciding whether to withhold his approval. That was not the holding of *Sala*, however, because Nevada law does no such thing.

[ 11 ]

Similarly, in *Serpa v. Darling*, one party's obligation to perform was "contingent upon his approval" of six items listed in an addendum. 810 P.2d 778, 781 (Nev. 1991). Because the party could back out of the contract simply by not approving those items, the Supreme Court of Nevada affirmed the trial court's holding that the contract was illusory. *Id.*

The dissent, citing to California case law, believed that the contract was not illusory. *Id.* at 784 (citing *Converse v. Fong*, Cal. Rptr. 242, 245 (1984)). In *Converse*, a California Court of Appeal had reasoned that "[a] party whose performance is subject to a satisfaction clause is under an implied duty to use good faith and diligence in performing." *Id.* While the dissent in *Serpa* would have adopted this position, the majority did not.

It is true that when applying California law to contracts formed in that State, the Supreme Court of Nevada has acknowledged that California courts "will uphold unilateral modification clauses" based on the duty of good faith—at least unless the clause is written in a way that "deprives the other party of fairness and reasonable notice." *NFL v. Gruden*, Case No. 85527, 2024 Nev. Unpub. LEXIS 394 (Nev. May 14, 2024) (unpublished). But the Court has never adopted this view into Nevada law. And in light of *Zhang*, *Sala*, and *Serpa*, there is zero indication it would do so.

[ 12 ]

### 4.4 Nevada's public policy is to take what the stronger party wrote at face value—not to judicially intervene to save it.

Nevada law has "long refrained from reforming or 'blue penciling' private parties' contracts." *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 156 (Nev. 2016) (superseded for noncompetes only by NRS 613.195). The Court should not attempt to save agreements that overreach. *Id.*

In *Golden Road*, a casino's contract forbid its employee from working at competitors within 150 miles. *Id.* at 153. The trial court refused to enforce the contract because it was an unreasonable restraint on trade. *Id.* On appeal, the casino argued that the court should have reformed the contract to make it reasonable—for instance, by "presuming the employer's good faith." *Id.* at 158. The Supreme Court of Nevada declined this invitation.

First, the Supreme Court of Nevada reasoned that the stronger party's contractual overreach must be punished: For every agreement that makes its way into court, the "in terrorem effect" of the stronger party's words has likely dissuaded thousands of weaker parties from pursuing their rights. *Id.* at 157. Striking down contracts—rather than reforming them—is the better policy choice, because it discourages the stronger party from drafting "truly ominous contracts," safe in the knowledge they will be reformed. *Id.*

[ 13 ]

Second, the Court explained that when the judiciary shows its willingness to help the stronger party out with its drafting, this "conflicts with the impartiality that is required of the bench." *Id.* at 157. Third, refusing to rewrite agreements "preserves judicial resources." *Id.* Fourth and finally, refusing to rewrite agreements is "consistent with basic principles of contract law that hold the drafter to a higher standard." *Id.*

Thus, when deciding whether to uphold a contract, the Court is unwilling to presume the stronger party's "good faith." *Id.* And when the bargaining positions are unequal, Nevada law does not demonstrate "compassion" for the stronger party. *Id.* at 158.

While the Nevada legislature later carved out a limited exception requiring courts to reform noncompetes, the reasoning of *Golden Road*—which draws on Nevada case law from a wide range of types of contract cases—shows how the Supreme Court of Nevada would likely view Defendants' attempt here to rely on their purported duty of good faith to prop up Front Gate's illusory Terms of Use.

The Court would not rush to save Front Gate from its contractual overreach here by presuming its good faith. Instead, following the principles in *Golden Road*, it would strike the Terms of Use down entirely.

[ 14 ]

### 4.5 The Supreme Court of Nevada would follow the *Zappos* decision, which is directly on point and correctly applies Nevada law.

Below, the District Court acknowledged—but did not follow—its decision in *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012). In *Zappos*, the court considered this unilateral modification provision:

> Zappos.com reserves the right to change this Site and these terms and conditions at any time. ACCESSING, BROWSING, OR OTHERWISE USING THE SITE INDICATES YOUR AGREEMENT TO ALL THE TERMS AND CONDITIONS IN THIS AGREEMENT, SO PLEASE READ THIS AGREEMENT CAREFULLY BEFORE PROCEEDING.

(Case 3:12-cv-00325-RCJ-VPC, Dkt. 10-23, Page 1 of 4.)

The court explained that under the terms' plain language, "nothing would prevent Zappos from unilaterally changing the Terms and making those changes applicable to that pending dispute if it determined that arbitration was no longer in its interest." 893 F. Supp. 2d at 1066. The terms thus allow Zappos to "hold its customers and users to the promise to arbitrate while reserving its own escape hatch." *Id.*

The Court in *Zappos* did what the Supreme Court of Nevada did in *Sala* and *Serpa*: Hold that the contract was illusory. The District Court below should have followed *Zappos*, rather than *West Cab* (where the arbitration agreement contained a saving clause) or *Cohn* (an unconscionability case).

[ 15 ]

### 4.6 The Supreme Court of Nevada would, if presented squarely with the question, join those courts that find similar arbitration agreements illusory.

The Supreme Court of Nevada, like most states, follows the Restatement (Second) of Contracts. *See Zhang*, 103 P.3d at 24. It also often follows majority positions when it comes to contract law. *See, e.g., United Servs. Auto Ass'n v. Schlang*, 894 P.2d 967, 973 (Nev. 1995) ("We conclude that the majority position … is the better reasoned approach"); *Nautilus Ins. v. Access Med., LLC*, 482 P.3d 683, 689 (Nev. 2021) (adopting a "majority rule").

"[M]ost" courts hold that unilateral modification provisions like the one in this case render a purported contract illusory. *In re Zappos, Inc.*, 893 F. Supp. at 1065 (collecting cases). This is the nationwide trend. *See id.*

This Court has cited favorably to two lead cases that illustrate this majority rule. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 n.22 (9th Cir. 2003) (citing *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219–20 (10th Cir. 2002) ("allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Fam. Steak Houses, Inc.*, 211 F.3d 306, 315–16 (6th Cir. 2000) (holding illusory an arbitration contract which the employer could alter "without any obligation to notify, much less receive consent from" the employee).

[ 16 ]

More recent cases continue this principle. *See, e.g., Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012) (holding an arbitration agreement illusory when new amendments would become binding upon notice); *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 180 (4th Cir. 2025) (holding an arbitration agreement illusory where one party could make changes "upon such notice to you as is required by law"); *Nat'l Fed'n of the Blind v. Container Store, Inc.*, 904 F.3d 70, 87 (1st Cir. 2018) (similar).

Given the widespread acceptance of this position, Nevada—building on *Sala* and *Serpa*—would follow it. *See In re Zappos*, 893 F. Supp. at 1065. And given the policy positions in *Golden Road*, Nevada would not join the minority of courts that attempt to save such contracts. 376 P.3d at 156.

### 4.7 The Supreme Court of Nevada follows the principle of construction against the drafter—which it would apply here to thwart Front Gate's interests.

The Supreme Court of Nevada construes written instruments against the drafter—sometimes elevating this principle above other canons of construction. *Dickenson v. Nev. Dep't of Wildlife*, 110 Nev. 934, 937 (1994) (holding "when a contract is ambiguous, it will be construed against the drafter"); *see also id.* at 939 (Rose, C.J., dissenting—and complaining about how much weight the majority gives the canon of *contra proferentum*).

[ 17 ]

Construction against the drafter is a flexible principle, and it should be applied based on the "specific confines" of the parties' dispute. *Dumais*, 299 F.3d at 1219. This includes interpreting a company's overreach in drafting an arbitration clause against its interests. *Id.*

A Court should sometimes imply an unwritten term to stop the company from doing something unfair. *Id.* But other times, the "better course" is for the Court to construe the document exactly as the company wrote it—and to refuse to save a company from its own drafting when it overreaches. *Id.*

This makes sense: If the stronger party wanted to "draft a valid arbitration clause," it could easily have done so—but it should not "be heard to complain when the language it drafted" is construed against its position. *Rhyan v. DW Direct, Inc.*, No. 4:19-CV-3599, 2020 U.S. Dist. LEXIS 193625, at *9 (S.D. Tex. Oct. 19, 2020) (finding arbitration agreement illusory).

In *Dumais*, the Tenth Circuit held an agreement illusory where two conflicting provisions created ambiguity over whether the stronger party could unilaterally alter the arbitration clause. 299 F.3d at 1219–20. One section stated the arbitration agreement could not be modified, but another gave the employer broad discretion to revise any provision.

[ 18 ]

Construing this inconsistency against the drafter, the Court concluded the stronger party had retained the power to revoke its obligation to arbitrate—which rendered the agreement illusory.

Just as the Tenth Circuit in *Dumais* was not sympathetic to the stronger party, so the Supreme Court of Nevada would likely not be sympathetic to the drafter here. Front Gate gave itself an unlimited right to change the Terms of Use at any time. Nothing in what it wrote would prevent it from—if it wanted to—getting out of arbitration for pending or accrued claims.

To the extent there is an ambiguity in what Front Gate wrote (and there is none), the District Court should have construed that ambiguity against Front Gate. Instead, the District Court did the opposite: It started by presuming the stronger party's good faith, then read into the contract limitations on Front Gate's future behavior that lacked any textual support. This is the type of reasoning "in a circle" to find a valid contract that the Supreme Court of Nevada rejects. *Zhang*, 103 P.3d at 24.

## 5. CONCLUSION.

This Court should reverse the District Court's decision importing a duty of good faith and fair dealing—which applies to *valid* contracts—into the Terms of Use to search for a way to make them valid.

[ 19 ]

Under the plain language of the Terms of Use, they were illusory. And if anything, the District Court should have construed the terms against the drafter. *See Dickenson*, 110 Nev. at 937; *Dumais*, 299 F.3d at 1219–20.

The stronger party should not be able to build in an "escape hatch" allowing it to avoid its obligations—then expect the Courts to bail it out. *In re Zappos*, 893 F. Supp. 2d at 1066. This Court should vacate the District Court's decision with instructions to deny Live Nation's motion.

Dated: June 26, 2025

>*/s/ Joel S. Hengstler*
>JOEL S. HENGSTLER, ESQ.
>THE 702 FIRM
>MICHAEL C. KANE, ESQ.
>Nevada Bar No. 10096
>BRADLEY J. MYERS, ESQ.
>Nevada Bar No. 8857
>8335 W. Flamingo Road
>Las Vegas, Nevada 89147
>
>/s/ Joel S. Hengstler

## CERTIFICATE OF SERVICE

I do hereby certify that on June 26, 2025, I submitted the foregoing for filing via the Court's CM/ECF electronic filing system. Electronic notifications will be sent to all parties.

>/s/ Joel S. Hengstler

[ 20 ]

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8.** Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-2436

I am the attorney or self-represented party.

**This brief contains** 4,325 **words, including** 0 **words**

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- ⦿ complies with the word limit of Cir. R. 32-1.

- ◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

- ◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

- ◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

- ◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - ☐ it is a joint brief submitted by separately represented parties.
  - ☐ a party or parties are filing a single brief in response to multiple briefs.
  - ☐ a party or parties are filing a single brief in response to a longer joint brief.

- ◯ complies with the length limit designated by court order dated [          ].

- ◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Joel S. Hengstler    **Date** 6/26/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*