# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERIN J. PAXSON,<br><br>       Plaintiff-Appellant,<br><br>*on behalf of herself and others similarly situated,*<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC., et al.<br><br>       Defendants-Appellees. | Case No. 25-2436<br><br><br><br>**APPELLANT'S<br>REPLY BRIEF** |

JOEL S. HENGSTLER, ESQ.
Nevada Bar No. 11597
MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
THE 702 FIRM
8335 W. Flamingo Road
Las Vegas, Nevada 89147
*Attorneys for Plaintiff-Appellant*

## ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

1. INTRODUCTION TO THE REPLY.............................................................1

2. STANDARD OF REVIEW....................................................................5

3. ARGUMENT ON REPLY.....................................................................5

   3.1   Although Erin argued for Ohio law, she included enough Nevada case law to preserve her arguments for appeal. ...................................5

   3.2   A Survival Clause Cannot Save an Illusory Contract—Survival Clauses Deal With What Happens After a Contract Ends, Not With Whether a Valid Contract Was Formed in the First Place. ..................7

   3.3   Formation Challenges are for the Court, Not the Arbitrator—The "Severability" Doctrine Does Not Apply to Formation.....................10

   3.4   When a Contract Lacks Consideration, Promissory Estoppel is the Remedy for Unfairness—Nevada Does Not Recognize Consideration by Partial Performance. .........................................................12

   3.5   The Supreme Court of Nevada in *Serpa* Declined to Follow California Law on Whether the Duty of Good Faith and Fair Dealing Can Save an Illusory Contract. ..............................................................14

4. CONCLUSION...........................................................................18

[ ii ]

# TABLE OF AUTHORITIES

**CASES**

*Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39
(Nev. 1969) ................................................................................3, 13

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................ 2, 10, 11

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) ........ 2, 10, 11

*Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012) ......................9

*Cohn v. Ritz Transp., Inc.*, 2014 U.S. Dist. LEXIS 53381
(D. Nev. Apr. 17, 2014) ................................................................16

*Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600 (6th Cir. 2013) ...... *passim*

*Dickenson v. Nev. Dep't of Wildlife*, 877 P.2d 1059 (1994) ....................................4

*Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459
(7th Cir. 2012) ................................................................. 1, 6, 7

*Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151 (Nev. 2016) ......................4, 18

*Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024) ...................4, 10

*Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169 (4th Cir. 2025) ................... *passim*

*Lee v. Verex Assurance*, 746 P.2d 140 (Nev. 1987) .............................................15

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022) ...................................................5

*Nautilus Ins. v. Access Med., LLC*, 482 P.3d 683 (Nev. 2021) ...........................17

*Pink v. Busch*, 691 P.2d 456 (Nev. 1984) ...................................................... 13, 14

*Pope v. Fellhauer*, 489 P.3d 918 (Nev. 2021) .......................................................15

*Reno v. West Cab Co.*, 2020 No. 2:18-cv-00840-APG-NJK; 2020 U.S. Dist. LEXIS 171842 (2020) .................................................................................15

*Sala & Ruthe Realty v. Campbell*, 515 P.2d 394 (Nev. 1973).............................1, 6

*Serpa v. Darling*, 810 P.2d 778 (Nev. 1991) ............................................. 3, 14, 15

*United Servs. Auto Ass'n v. Schlang*, 894 P.2d 967 (Nev. 1995) ........................17

*Wallace v. Fortune Hi-Tech Mktg.*, No. 11-127-JBC, 2012 U.S. Dist. LEXIS 136029 (E.D. Ky. Sep. 24, 2012) .....................................................................8

*Whitemaine v. Aniskovich*, 183 P.3d 137 (Nev. 2008)..........................................12

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058 (D. Nev. 2012)............................................................................ *passim*

[ iv ]

## 1. INTRODUCTION TO THE REPLY.

The District Court erred in enforcing Front Gate's Terms of Use—a document that allows one party to change its obligations "at any time" and "effective immediately," without notice. Under Nevada law, such an agreement is not a contract at all, but an illusory promise. *Sala & Ruthe Realty v. Campbell*, 515 P.2d 394, 396 (Nev. 1973). A unilateral modification clause that permits the drafter to revoke its obligations at will leaves no mutuality of obligation and therefore no contract to arbitrate. *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012).

*First*, Erin preserved her Nevada law arguments. Although the Defendants now claim waiver, Erin presented below the same legal theory she advances here—that unilateral modification makes the agreement illusory—and she supported it with the only published Nevada decision on point, *Zappos*. Because this was a putative class action, Erin's briefing below surveyed 17 states' laws, including Nevada's, and Defendants themselves cited *Sala* in response. The District Court addressed the issue under Nevada law, so the matter was preserved for appeal. *Emergency Servs. Billing Corp. v. Allstate Ins. Co.*, 668 F.3d 459, 465 (7th Cir. 2012).

[ 1 ]

*Second,* Defendants' reliance on a "survival clause" does not save their contract from being illusory. Such clauses govern what provisions persist after a valid contract ends—they do not manufacture consideration where none ever existed. *Johnson v. Cont'l Fin. Co., LLC,* 131 F.4th 169, 177 (4th Cir. 2025). The question here is one of contract formation, not termination.

A contract that allows one party to unilaterally modify it at any time is illusory, even if it contains survival language in the arbitration clause. *Day v. Fortune Hi-Tech Mktg., Inc.,* 536 F. App'x 600, 604 (6th Cir. 2013). This is because the unilateral modification clause would simply allow the stronger party to delete or modify generic survival language in the arbitration clause at any time. *Id.* Thus, survival language alone does not make a true "saving clause"—Courts have required those to be far more specific than the generic survival language that Defendants included here.

*Third,* formation challenges are for the Court, not the arbitrator. The "severability" doctrine of *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440 (2006), applies only to disputes over the validity of an existing contract—not to disputes over whether a contract was ever formed. *Caremark, LLC v. Chickasaw Nation,* 43 F.4th 1021, 1030 (9th Cir. 2022). Here, there was no agreement to begin with—so there is no arbitration agreement to sever.

[ 2 ]

*Fourth*, Nevada has never recognized any doctrine allowing for part performance to provide consideration for a contract that lacks it. Instead, Nevada applies the doctrine of promissory estoppel. *Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 41 (1969) ("[W]here traditional consideration is lacking, reliance which is foreseeable, reasonable, and serious will require enforcement if injustice cannot otherwise be avoided.").

Promissory estoppel, however, is a fact-intensive inquiry requiring a fully-developed record. Defendant never raised this theory below, and it makes the argument in only a perfunctory way now. The Court should decline to address Defendants' suggestion that—based on its part performance of the Terms of Sale (a different contract)—Erin is somehow estopped from asserting that the Terms of Use are illusory. Any estoppel issues can be adequately addressed by the District Court on remand.

*Fifth*, Nevada law diverges sharply from California's on whether the duty of good faith and fair dealing can save an illusory contract. In *Serpa v. Darling*, 810 P.2d 778, 781 (Nev. 1991), the Supreme Court of Nevada held a contract illusory where one party's obligation was conditional upon its own approval. Only the *dissent*, citing California precedent, would have imported the duty of good faith and fair dealing to save the contract.

[ 3 ]

Nevada has never adopted that view and expressly disfavors judicial reformation to rescue one-sided agreements. *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 156–58 (Nev. 2016). There is no reason to believe that the Supreme Court of Nevada would follow California on this issue, when it is so strongly against the policy expressed in *Golden Road*, and when the overwhelming majority of courts in this country have gone the other way.

***Finally***, when an agreement's language is ambiguous, Nevada construes it against the drafter. *Dickenson v. Nev. Dep't of Wildlife*, 877 P.2d 1059, 1061 (1994). Here, Front Gate's "effective immediately" clause authorizes retroactive modifications without notice—the same defect this Court condemned in *Heckman*, 120 F.4th at 678.

Even if the Terms of Use are somehow ambiguous, Courts must incentivize clear drafting by those who have the market power to write contracts of adhesion. *Golden Rd.*, 376 P.3d at 156–58. As *Zappos* recognized, a contract that allows one side to alter its obligations without assent is "illusory and unenforceable." 893 F. Supp. 2d at 1065.

Because the Supreme Court of Nevada would refuse to save Front Gate and the Ticketmaster Defendants from their own drafting overreach, this Court should reverse.

[ 4 ]

## 2.     STANDARD OF REVIEW.

The FAA's policy is to make arbitration clauses "as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). Whether a contract is illusory goes to formation, so no FAA presumption in favor of arbitrability applies. *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 173 (4th Cir. 2025).

## 3.     ARGUMENT ON REPLY.

We first address Defendants' half-hearted waiver argument—then move on to Defendants' substantive points.

### 3.1     Although Erin argued for Ohio law, she included enough Nevada case law to preserve her arguments for appeal.

In its motion to compel arbitration, Defendants asked the Court to apply California law to contract formation issues—not Nevada law. (SER-52–54.) Erin argued below that because she clicked the "Create Account" button in Ohio, that state's law applied to contract formation issues. (SER-66, 74.) Plaintiff included a well-reasoned argument under Ohio law that makes all the same points she now makes under Nevada law. (SER-79–81.)

Moreover, this was a class action, and Erin had already filed a motion for class certification. So, to support her class-wide arguments, Erin began by arguing that courts across the country agreed that unilateral modification

[ 5 ]

clauses like Front Gate's rendered the contract illusory. (SER-79.) To make her point, she then cited the only published on-point Nevada authority, *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012). (SER-66, 79.)

Next, Erin provided an overview of the law in 17 states, noting that class members who signed up for contracts in at least those states would be "able to avoid arbitration." (SER-66) Plaintiff included the full survey—which included Nevada—before the District Court. (Reply Excerpts of Record at 1.)

What is more, Defendants responded to this Nevada-law argument at length in their reply brief below, arguing that the Terms "are not illusory under Nevada law." (SER-59.) Defendants cited to *Sala & Ruthe Realty v. Campbell*, 515 P.2d 394, 396 (Nev. 1973), one of the key authorities cited by Erin in this appeal. (SER-59.) The District Court then addressed Erin's argument at length under Nevada law. (ER-55–57.)

When a litigant presented a "skeletal argument" on a matter of law below, which the District Court "recognized and addressed"—and which the party "has now fleshed out and emphasized on appeal"—the argument is preserved for appeal. *Emergency Servs. Billing Corp. v. Allstate Ins.*, 668 F.3d 459, 465 (7th Cir. 2012).

[ 6 ]

Given the District Court's lengthy analysis, even a "skeletal" argument would suffice to preserve the issue for appeal—but Erin did better than that here. She presented the only published Nevada authority directly on point—the Zappos decision—and she cited cases around the country to make the same substantive arguments that she makes now.

The District Court was thus presented with and considered the relevant authorities and principles needed to avoid error. That Erin has fleshed out her argument on appeal does not mean she waived it below. *Emergency Servs.*, 668 F.3d at 465.

### 3.2 A Survival Clause Cannot Save an Illusory Contract—Survival Clauses Deal With What Happens After a Contract Ends, Not With Whether a Valid Contract Was Formed in the First Place.

Front Gate and the Ticketmaster Defendants point to a single sentence of "survival language" in the arbitration clause in the Terms of Use. (ER-34) ("This arbitration agreement is intended to be broadly interpreted, and will survive termination of these Terms."). This boilerplate survival language, however, does not restrict the unilateral modification clause in any way.

When the stronger party has the benefit of a unilateral modification clause, mere "survival language" in the arbitration provision isn't enough to stop a contract from being illusory. *Day v. Fortune Hi-Tech Mktg.*, 536 F.

[ 7 ]

App'x 600, 605 (6th Cir. 2013).  This is because the stronger party can—

relying on the unilateral modification clause—simply alter or remove the

survival language "at any time" it chooses.  *Id.*; *accord Wallace v. Fortune Hi-*

*Tech Mktg.*, No. 11-127-JBC, 2012 U.S. Dist. LEXIS 136029, at *7 (E.D. Ky. Sep.

24, 2012) (denying motion to compel arbitration).

Moreover, as the Sixth Circuit has explained, relying solely on survival

language to save an illusory contract is circular:  If a purported agreement

lacks consideration, then there was never a contract "in the first place"—so

there is nothing left to survive.  *Day*, 536 F. App'x at 605.

The problem with a survival clause is that it "does not eliminate" the

stronger party's "discretion to terminate or amend the arbitration agreement

while the underlying contracts remain in effect."  *Id.* at *9.

Courts have reasoned similarly about notice language:  If notice

language in an arbitration clause can be unilaterally deleted by the stronger

party, it doesn't matter how specific the notice provision is.  In one of

Defendants' own cases, the Court remarked that a company's unilateral

modification clause would have allowed it to first "shorten the notice

period" from 30 days down to almost nothing, and only then turn around

and delete its arbitration program.  *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal.

[ 8 ]

App. 4th 1425, 1459 (2012). For this reason, even long notice periods aren't even to save contracts from illusoriness where the unilateral modification provision is broad, and there are no specific limitations on changes.

Mere survival language in an arbitration clause differs from a saving clause. A saving clause is a provision that states explicitly that the unilateral modification provision cannot be applied to modify the arbitration procedure for already-accrued claims. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 206 (5th Cir. 2012). Saving clauses include specific language limiting the stronger party's power to modify.

By contrast, the survival language Defendants point to here is generic—far from limiting Defendants' right to unilaterally modify or axe the arbitration agreement, the language simply contemplates a scenario where Front Gate has suspended a website user (or shut its website down entirely), and thus the Terms of Use have ended. The ostensible purpose of the clause is simply to clarify that even if Front Gate suspends a user or shuts down its website, the arbitration clause survives.

Nothing in the language purports to restrict Defendants' unlimited ability to make "[a]ny changes" it desires to the Terms of Use. If Defendants wanted to revoke the survival language, the Terms empower it to do so.

[ 9 ]

Nor can Defendants rely on the phrase "By continuing to use this Site after that date, you agree to the changes." As this Court has explained, such provisions make it "nearly impossible to avoid retroactive application of any changes Ticketmaster imposes," because consumers need to "revisit the site" to use tickets they have already purchased. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 678 (9th Cir. 2024), *cert denied*, No. 24-1145 (Oct. 6, 2025).

Moreover, even to file this lawsuit, Erin had to look up the Terms of Use on Front Gate's website. *See also Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 180 (4th Cir. 2025) (holding that a credit card company's ability to change terms by posting a notice on its website put "no constraint" on its "ability to escape its contractual obligations.").

### 3.3 Formation Challenges are for the Court, Not the Arbitrator — The "Severability" Doctrine Does Not Apply to Formation

The Court must first "resolve any challenge that an agreement to arbitrate was never formed, even in the presence of a delegation clause." *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022).

To attempt to get around this, Defendants cite *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), to claim that this Court should sever the arbitration agreement from the rest of the contract and enforce it separately.

[ 10 ]

But *Buckeye* acknowledges that "issue of the contract's *validity* is different" from whether the agreement "was ever concluded." *Id.* at 444 n.1 (emphasis added). It is "common sense" that if a contract "was never formed," then there is "no agreement from which any provision, including an arbitration clause, can be severed." *Johnson,* 131 F.4th at 177.

For this reason, challenges to an existing contract's *validity* may be delegated to the arbitrator—but challenges to whether the *elements* of a contract are satisfied cannot. *Caremark,* 43 F.4th at 1030.

As the Fourth Circuit—rejecting Defendants' same argument here— explained, the "[t]he severability doctrine … plainly applies to 'a challenge to the validity of [a] contract,' not a challenge to its *formation*." *Johnson*, 131 F.4th at 176 (emphasis in original).

The Court then explained that any "new law student" learns the difference between "contract formation and validity." *Id.* A claim that a contract was never formed negates one of the two essential elements of a contract—mutual assent and consideration. *Id.* By contrast, a claim that a contract is invalid assumes the existence of a contract—but maintains that the contract shouldn't be enforced.

[ 11 ]

It would thus "put the cart before the horse to enforce any provision of the agreement, including the delegation clause, before deciding whether the agreement itself was ever formed." *Id.* at 175. This Court should reject Defendants' bid to send an issue of formation to the arbitrator.

### 3.4 When a Contract Lacks Consideration, Promissory Estoppel is the Remedy for Unfairness—Nevada Does Not Recognize Consideration by Partial Performance.

Defendants—without fully developing the argument—hint that because Erin did receive tickets and attend the concert, there is somehow consideration for the Terms of Use (which governed Erin's use of the website). Defendants never made this argument below, and the District Court did not address it. This Court should not affirm on this underdeveloped alternative ground.

First, the argument conflates the Terms of *Use* with the Terms of *Sale*. These were standalone documents that do not reference each other, so they are not part of the same contract. *See Whitemaine v. Aniskovich*, 183 P.3d 137, 143 (Nev. 2008). Perhaps there was part performance of the Terms of Sale, but the Terms of Use merely governed Erin's use of the website—and because Front Gate had no obligations under the Terms of Use, it is hard to imagine how it could have partially performed under them.

[ 12 ]

But more importantly, the doctrine Defendants are attempting to articulate—estoppel by conduct (sometimes called promissory estoppel)—is "not the same as finding that there was a contract in place during the relevant time period." *Day*, 536 F. App'x at 605 .

To be clear, Nevada has never recognized any theory that part performance is a consideration substitute. Nevada, like many States, instead follows the rule that "where traditional consideration is lacking," one party's foreseeable and "serious" reliance will require an illusory promise to be enforced "if injustice cannot otherwise be avoided." *Am. Sav. & Loan Ass'n v. Stanton-Cudahy Lumber Co.*, 455 P.2d 39, 41 (Nev. 1969).

The four elements of promissory estoppel in Nevada are difficult and fact-intensive, and include that Erin must have been "apprised of the true facts"; that she have intended her conduct to "be acted upon" by Front Gate; that Front Gate must have been "ignorant of the true state of facts"; and that Front Gate must have relied to its detriment on Erin's conduct. *Pink v. Busch*, 691 P.2d 456, 459 (Nev. 1984).

Promissory estoppel is a fact-intensive equitable question not properly before this Court. *Day*, 536 F. App'x at 605. Defendants did not ask the Court below to enforce "discrete provisions of the contract" based on the "parties'

[ 13 ]

course of conduct." *See id.* Nor did they assert "equitable reason[s]" supporting enforcement, or claim Erin induced them into performance by representing she would arbitrate. *See id.*

Defendants have raised this theory of part performance for the first time on appeal; the District Court has never addressed it in the first instance; and they have introduced no evidence that they foreseeably relied on the arbitration clause, or that they were "ignorant of the true state of facts." *Pink v. Busch*, 691 P.2d at 459. The Court should not affirm on this basis.

### 3.5 The Supreme Court of Nevada in *Serpa* Declined to Follow California Law on Whether the Duty of Good Faith and Fair Dealing Can Save an Illusory Contract.

Defendants double down on their claim that Nevada would, like California, import the duty of good faith and fair dealing to save an illusory contract. But Nevada has already rejected California law on this point. In *Serpa v. Darling*, one party's obligation to perform was "contingent upon his approval" of six items listed in an addendum. 810 P.2d 778, 781 (Nev. 1991). Because the party could back out of the contract simply by not approving those items, the Supreme Court of Nevada affirmed the trial court's holding that the contract was illusory. *Id.*

[ 14 ]

The dissent, citing to California case law, believed that the contract was not illusory. *Id.* at 784 (citing *Converse v. Fong*, Cal. Rptr. 242, 245 (1984)). In *Converse*, a California Court of Appeal had reasoned that "[a] party whose performance is subject to a satisfaction clause is under an implied duty to use good faith and diligence in performing." *Id.*

The Supreme Court of Nevada thus followed the majority rule, and rejected California's special rule. Only the dissent would have used the duty of good faith and fair dealing to save an otherwise illusory contract.

Defendants' brief nowhere addresses *Serpa* and its implications. Instead, Defendants ask this Court to reflexively apply California law without first considering Nevada cases. But where "Nevada law is on point," the court declines "to look to California law for guidance." *Pope v. Fellhauer*, 489 P.3d 918 (Nev. 2021). When Nevada's case law provides a "sufficient basis" for the decision, Nevada will "decline the invitation" to look to California. *Lee v. Verex Assurance*, 746 P.2d 140, 142 (Nev. 1987)

Moreover, the "multiple" federal cases that Defendants claim support their view are unpublished. First, *Reno v. West Cab Co.*, No. 2:18-cv-00840-APG-NJK, 2020 U.S. Dist. LEXIS 171842, at *7 (D. Nev. Sep. 18, 2020), was by the same District Court judge that decided this case. So, it represents the

[ 15 ]

view of a single jurist. Meanwhile, in *Cohn v. Ritz Transp., Inc.*, Judge Mahan held that a certain contract wasn't unconscionable—but *Cohn* said nothing about whether the contract was formed in the first place. No. 2:11-CV-1832 JCM (NJK), 2014 U.S. Dist. LEXIS 53381, at *8 (D. Nev. Apr. 17, 2014).

By contrast, Plaintiff's *Zappos* authority is squarely on point. In *Zappos*, the District Court considered the following terms, which included an arbitration agreement:

**Legal Notices**

Welcome to the website (the "Site") of Zappos.com, Inc. ("Zappos.com"). Zappos.com provides its services to you subject to the notices, terms, and conditions set forth in this agreement (the "Agreement"). In addition, when you use any Zappos.com service (e.g., Customer Reviews), you will be subject to the rules, guidelines, policies, terms, and conditions applicable to such service, and they are incorporated into this Agreement by this reference. Zappos.com reserves the right to change this Site and these terms and conditions at any time. **ACCESSING, BROWSING OR OTHERWISE USING THE SITE INDICATES YOUR AGREEMENT TO ALL THE TERMS AND CONDITIONS IN THIS AGREEMENT, SO PLEASE READ THIS AGREEMENT CAREFULLY BEFORE PROCEEDING.**

(Zappos Dkt., Case 3:12-cv-00325-RCJ-VPC, 10-23.)

Just as in this case, using the website indicates agreement to the terms. And just like this case, the *Zappos* terms (at best) purported to only grant the user a "limited" (and fully revocable) right to view the webpage.

[ 16 ]

So the only possible consideration would be the parties being mutually bound to arbitrate, which the court found illusory because that right could be changed "at any time." Rather than import a duty of good faith and fair dealing into something that wasn't a valid contract, the court in *Zappos* did what the Supreme Court of Nevada did in *Sala* and *Serpa*: Hold the contract was illusory. *In re Zappos, Inc.*, 893 F. Supp. 2d 1058, 1065 (D. Nev. 2012). The District Court below should have followed the well-reasoned *Zappos* decision, rather than *West Cab* (where the arbitration agreement contained a saving clause) or *Cohn* (an unconscionability case).

There is also no reason to think that Nevada would follow California law rather than the majority position and its own case law, as illustrated by *Serpa*. Nevada typically follows majority positions when it comes to contract law. *See, e.g.*, *United Servs. Auto Ass'n v. Schlang*, 894 P.2d 967, 973 (Nev. 1995) ("We conclude that the majority position … is the better reasoned approach, and elect to adopt the reasoning of those cases"); *Nautilus Ins. v. Access Med., LLC*, 482 P.3d 683, 689 (Nev. 2021) (adopting a "majority rule").

As the District of Nevada has previously acknowledged: "Most federal courts that have considered this issue have held that if a party retains the unilateral, unrestricted right to terminate the arbitration agreement, it is

[ 17 ]

illusory and unenforceable, especially where there is no obligation to receive consent from, or even notify, the other parties to the contract." *In re Zappos*, 893 F. Supp. 2d at 1065 (applying Nevada law and collecting cases).

Moreover, Defendants' brief did not respond to Erin's policy points. Nevada law has "long refrained from reforming or 'blue penciling' private parties' contracts." *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 156 (Nev. 2016) (superseded for non-competes only by NRS 613.195). The Court should not attempt to save agreements that overreach, particularly by parties with significant market power. *Id.* Based on Nevada policy, the Supreme Court of that State — following its precedent in *Golden Road* — would strike the Terms of Use down entirely.

## 4.  CONCLUSION.

Under Nevada law, a contract that permits unilateral, retroactive modification is no contract at all — and a single, generic sentence stating the arbitration clause survives "termination" of the agreement doesn't cure that. This Court should reverse and remand because the Terms of Use are illusory and unenforceable.

[ 18 ]

Dated:  November 18, 2025

*/s/ Joel S. Hengstler*
JOEL S. HENGSTLER, ESQ.
THE 702 FIRM
MICHAEL C. KANE, ESQ.
Nevada Bar No. 10096
BRADLEY J. MYERS, ESQ.
Nevada Bar No. 8857
8335 W. Flamingo Road
Las Vegas, Nevada 89147

/s/ Joel S. Hengstler

## CERTIFICATE OF SERVICE

I do hereby certify that on November 18, 2025, I submitted the foregoing for filing via the Court's CM/ECF electronic filing system. Electronic notifications will be sent to all parties.

/s/ Joel S. Hengstler

[ 19 ]